1  RONALD P. SLATES, SBN: 43712
   JAMES W. DENISON, SBN: 155337
2  RONALD P. SLATES, P.C.
   500 Grand Avenue, Suite 2010
3  Los Angeles, California 90071
   (213) 624-1515
4  (213) 624-7536 fax
   rslates2@rslateslaw.com
5
   Attorneys for Plaintiff
6  Ronald P. Slates

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  RONALD P. SLATES, an individual,        )   CASE NO.: 2:21-cv-1650
                                            )
12                  Plaintiff,              )   COMPLAINT FOR:
                                            )
13          vs.                             )   (1)  VIOLATION OF SECTION
                                            )        10(b) OF THE EXCHANGE ACT
14  ADAMA TECHNOLOGIES                      )        AND RULE 10b-5;
    CORPORATION, a forfeited Delaware       )
15  corporation; ERIC SILLS, an individual; )   (2)  VIOLATION OF SECTION 12(a)
    BRANDON RUSHING, an individual;         )        (1) OF THE SECURITIES ACT;
16  HAROLD TANNER, an individual;           )
    KEITH ROSENBLUM, an individual;         )   (3)  VIOLATION OF SECTION 12(a)
17  ROWEN PFEIFER, an individual;           )        (2) OF THE SECURITIES ACT;
    INTERNATIONAL AMBITIONS, LLC,           )
18  a revoked Nevada limited liability      )   (4)  VIOLATION OF SECTION 11
    company; JA INVESTMENT                  )        OF THE SECURITIES ACT;
19  HOLDINGS, LLC, a revoked Nevada         )
    limited liability company; ALPINE       )   (5)  VIOLATION OF CALIFORNIA
20  INDUSTRIES, LLC, a Utah limited         )        CORPORATE CODE SECTION
    liability company; ERIK DURRANT, an     )        25401;
21  individual; and DOES 1 - 10, inclusive, )
                                            )   (6)  FRAUD; AND
22                  Defendants.             )
                                            )   (7)  NEGLIGENT
23  _____  )        MISREPRESENTATION;
                                            )
24                                              DEMAND FOR JURY TRIAL

25

26      For his Complaint against Defendants ADAMA TECHNOLOGIES

27  CORPORATION, ERIC SILLS, BRANDON RUSHING, HAROLD TANNER,

28  KEITH ROSENBLUM, ROWEN PFEIFER, INTERNATIONAL AMBITIONS,

    LLC, JA INVESTMENT HOLDINGS, LLC, ALPINE INDUSTRIES, LLC, ERIK

1  DURRANT, and DOES 1 through 10, inclusive, Plaintiff RONALD P. SLATES

2  alleges as follows:

3                                    **JURISDICTION**

4        1.     This court has original jurisdiction pursuant to the Securities Act of

5  1933, 15 USC §§ 77a et seq., as amended, and in particular §§ 5, 12(1), 12(2), 15,

6  and 20, the Exchange Act of 1934, 15 USC §§ 78a et seq., as amended, and in

7  particular § 10(b) and Rule 10b-5, 28 USC § 1331, and the Court's supplemental

8  jurisdiction pursuant to 28 USC § 1367.

9                                    **PARTIES**

10       2.     Plaintiff, RONALD P. SLATES ("Plaintiff"), is now and was, at all

11  times herein mentioned, an individual residing in the County of Los Angeles, State of

12  California.

13       3.     Plaintiff is informed and believes, and based upon such information and

14  belief alleges, that Defendant ADAMA TECHNOLOGIES CORPORATION

15  ("Adama"), was a corporation formed under the laws of the State of Delaware on

16  September 19, 2007, with a principal place of business in Jackson, Tennessee, whose

17  corporate status was forfeited as of January 13, 2019.

18       4.     Plaintiff is informed and believes, and based upon such information and

19  belief alleges that Defendant ERIC SILLS is now and was, at all times herein

20  mentioned, an individual residing in Jackson, Tennessee.

21       5.     Plaintiff is informed and believes, and based upon such information and

22  belief alleges that Defendant BRANDON RUSHING is now and was, at all times

23  herein mentioned, an individual residing in Jackson, Tennessee.

24       6.     Plaintiff is informed and believes, and based upon such information and

25  belief alleges that Defendant HAROLD TANNER is now and was, at all times herein

26  mentioned, an individual residing in Richmond, Utah.

27

28

COMPLAINT

7.      Plaintiff is informed and believes, and based upon such information and belief alleges that Defendant KEITH ROSENBLUM is now and was, at all times herein mentioned, an individual residing in Franklin, Tennessee.

8.      Plaintiff is informed and believes, and based upon such information and belief alleges that Defendant ROWEN PFEIFER is now and was, at all times herein mentioned, an individual residing in Murfreesboro, Tennessee.

9.      Plaintiff is informed and believes, and based upon such information and belief alleges that Defendant INTERNATIONAL AMBITIONS, LLC, was, at all times herein mentioned, a limited liability company formed under the laws of the State of Nevada, with its principal place of business in Las Vegas, Nevada, whose status was revoked sometime after September 30, 2017.

10.      Plaintiff is informed and believes, and based upon such information and belief alleges that Defendant JA INVESTMENT HOLDINGS, LLC, is now and was, at all times herein mentioned, a limited liability company formed under the laws of the State of Utah, with its principal place of business in Las Vegas, Nevada, whose status was revoked sometime after July 31, 2016.

11.      Plaintiff is informed and believes, and based upon such information and belief alleges that Defendant ALPINE INDUSTRIES, LLC, is now and was, at all times herein mentioned, a limited liability company formed under the laws of the State of Utah, with its principal place of business in Alpine, Utah.

12.      Plaintiff is informed and believes, and based upon such information and belief alleges that Defendant ERIK DURRANT is now and was, at all times herein mentioned, an individual residing in Richmond, Utah.

13.      As permitted by Local Rule 19-1, Plaintiff avers that the true names and capacities of Defendants DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend its Complaint to allege said Doe Defendants' true names and capacities when the same has been ascertained.

1   Plaintiff is informed and believes and, upon such information and belief alleges, that

2   each Defendant designated herein is responsible in some actionable manner for the

3   occurrences and injuries alleged herein.

4         14.    Plaintiff is informed and believes and based upon such information and

5   belief alleges that at all times herein mentioned, Defendants, and each of them, were

6   agents, servants, representatives, joint venturers, partners and/or alter egos of their

7   Co-Defendants and in doing the things hereinafter alleged, were acting within the

8   course and scope of their authorities as agents, servants, representatives, joint

9   venturers, partners, and/or alter egos with the permission and consent of their Co-

10  Defendants, each Co-Defendant having ratified the acts of the other Co-Defendants.

11  Plaintiff is informed and believes, and upon such information and belief alleges, that

12  each of the Defendants named herein, were and are in some manner responsible for

13  the actions, acts and omissions herein alleged, and for the damage caused by the

14  Defendants, and are, therefore, jointly and severally liable for the damages caused to

15  Plaintiff.  Plaintiff is informed and believes, and upon such information and belief

16  alleges, that each of the Defendants, were, at all times herein mentioned, acting in

17  concert with, and in conspiracy with, each and every one of the remaining

18  Defendants.

19        15.    Wherever appearing in this Complaint, each and every reference to

20  Defendants or to any of them, is intended to be and shall be a reference to all

21  Defendants hereto, and to each of them, named and unnamed, including all

22  fictitiously named Defendants, unless said reference is otherwise specifically

23  qualified.

24        16.    The obligations herein sued upon arose, occurred, happened, and were

25  and now are due, owing and payable from Defendants, and each of them, to Plaintiff

26  in the above-entitled judicial district in the County of Los Angeles, State of

27  California.

28

COMPLAINT

**GENERAL ALLEGATIONS**

17.     According to public filings Defendant Adama submitted to the Securities and Exchange Commission ("SEC"), Adama was incorporated under the laws of Delaware in September 2007 as 1 Lane Technologies Corporation, then changed its name to Adama on February 27, 2009.

18.     In the same public filings, Defendant Adama represented that its business had consisted primarily of buying rights to technology of other companies or ownership of technology companies and mining related companies.

19.     In September 2015, Adama entered into an Agreement and Plan of Merger and Acquisition with Incubator Holdings, Inc. (the "Incubator Agreement"). At that time, a controlling 51 percent share of preferred stock in Adama was owned by Defendant International Ambitions, LLC, whose principal member was identified as Defendant Rowen Pfeifer ("Pfeifer").

20.     On August 26, 2016, Adama held a special shareholders meeting to unwind the Incubator Agreement and to remove John Griffin, who had been the chairman, chief executive officer, president, and secretary of Adama for the past five months.  The vote was approved by the "holders of the majority voting interest" in Adama, which was either still Defendant International Ambitions and Defendant Pfeifer as its principal, or Defendant JA Investment Holdings, LLC, which also had Defendant Pfeifer as its principal.  The majority also voted at this time to install Defendant Eric Sills ("Sills") as president and chief executive officer and Defendant Brandon Rushing ("Rushing") as vice-president and chief operating officer. Defendants Sills and Rushing were also appointed to Adama's board of directors at this time.

21.     In September 2016, Adama's then accounting firm, Anton & Chia, LLP, informed Adama that it intended to resign as Adama's accountants.

22.     In November 2016, according to Adama's SEC filings signed by Defendant Sills, Adama entered into an agreement to acquire Defendant Alpine

5

1  Technologies ("Alpine").  The Alpine acquisition agreement was attached to

2  Adama's 8-k report regarding the transaction dated November 23, 2016, with

3  electronic signatures of Defendant Sills and Defendant

4      23.    Based on the Alpine acquisition, Adama reported the state of Alpine's

5  financial condition for 2016 as Adama's own.  As a result, although Adama had

6  reported having no assets, with retained earnings in the negative millions in 2015,

7  Adama now revised the 2015 numbers to reflect Alpine's financial condition as of

8  year-end 2015 and reported having sizable assets and positive income for 2016.

9      24.    In its annual report for fiscal year 2016, Adama indicated ownership of

10 its shares that differed from those previously reported.  Pfeiffer was now listed as

11 holding 25 million shares in his own name, and Rosenblum was listed as also holding

12 25 million shares.  The combined 50 million shares made up 49 percent of Adama's

13 ownership.  The remaining 51 percent was reportedly now held by Defendant JA

14 Investment Holdings, LLC ("JA Investment").  At the close of Adama's fiscal year

15 2016, as well as subsequently when Adama actually filed its annual report for 2016,

16 JA Investment had failed to maintain its status with the Nevada Secretary of State

17 and, at some point after July 31, 2016, JA Investment's status was revoked.

18     25.    In December 2017, Adama began representing to the media that it had

19 developed a cryptocurrency called CryX that was to be traded through an Adama-

20 owned a cyber store and that it was partnering with a new crypto currency exchange

21 site called Bit Trader Live.  The representations about the venture were attributed to

22 Adama's CEO Sills.

23     26.    The announcement of Adama's "pivot" from Alpine's government

24 contract supplier work to a cryptocurrency player resulted in an immediate spike in

25 Adama's share value.  In an article about the move in the New York Oracle Dispatch

26 on December 17, 2017, Adama, referred to as a self-described publicly traded

27 venture capital company, was quoted, saying:  "Our management team employs a

28 precise investment matrix that allows us to identify, evaluate and ultimately select

1  what we believe to be high growth, high yield companies to become our next success
2  story."  A similar report, with quotes attributed to Defendant Sills about the
3  cryptocurrency venture, had also appeared on Yahoo!Finance's web site on
4  December 14, 2017.  According to Sills, "Our team of designers and developers have
5  really caught the vision of what we are trying to build and what we will accomplish
6  in blending and marrying the cryptocurrency and online retail sectors. We will be
7  providing customers an entirely unique online retail experience and offer them
8  flexibility and freedom in how they choose to pay for their purchases. Our
9  partnership with BitTraderLive is a huge leap forward in allowing us to accomplish
10 and achieve the vision we have outlined for this exciting new opportunity."

11        27.    No SEC 8-k filings were submitted with similar information about the
12 cryptocurrency venture at the time, however.  In fact, Adama had yet to file its 2017
13 annual report regarding the fiscal year ending September 30, 2017, either.  Although
14 in the past Adama had been late to file annual reports, the longest it had taken it to
15 update its 10-k filing was six months.

16        28.    Between December 2018 and May 2018, while investors awaited
17 Adama's official annual report, Adama flooded the media with unofficial press
18 releases about its growth and business prospects.  On February 7, 2018, on a website
19 called FSCWire, Adama announced the completion date for a U.S. Air Force
20 contract.  Defendant Harold Tanner ("Tanner"), who was now identified as Adama's
21 president, said:  "This is great news for our Company. It is always exciting when we
22 successfully complete another contract. This allows us to move quickly into
23 production on some of our newer contracts and will enable us to continue our steady
24 focus on bidding additional contracts."  The website also stated that Adama
25 continued to focus on the cryptocurrency venture while simultaneously increasing
26 revenues from the company's traditional business.  Tanner was further quoted as
27 saying, "[W]e are really experiencing growth and development in all facets of our
28 business. From our new ventures to our current operations, we are really excited to

1   see what tremendous potential we have in store over the next 12 months." The

2   article then retold Adama's story about having merged with Alpine Industries in 2016

3   and the type of business Alpine had been engaged in since 1974.

4       29.    On March 13, 2018, Adama's announcement of bids on $3 million in

5   government and other contracts.  Tanner, again identified as Adama's president,

6   stated:  "Historically we have been very successful in winning these types of

7   contracts simply because we have been building parts for military and defense

8   contracts for a long, long time, over 50 years. When we are bidding on these

9   contracts, the people we are working with already know us and in many cases have

10   awarded bids to us previously and have seen our work and our ability to perform.

11   Additionally, we have a great structure and system in place that allows us to keep our

12   costs manageable and therefore our pricing on these contracts is always very

13   competitive."

14       30.    On March 14, 2018, Adama announced that it had been accepted to be

15   listed on the OTCQB marketplace trading site.  In the same announcement, Tanner,

16   again identified as Adama's president, discussed Adama's plans for future revenue

17   growth.  He concluded, "From winning new contracts to bidding additional projects

18   to up-listing to the QB, our team is really putting in the time and effort and

19   performing at a very high level."

20       31.    In the OTCQB certification Adama had submitted to OTC Markets on

21   March 6, 2018, electronically signed by Sills, the following "control persons" were

22   identified as having the following numbers of shares in the company:  Sills, 8 million

23   shares; Tanner, 9 million shares; Rosenblum, 25 million shares; Pfeifer, 25 million

24   shares.

25       32.    On March 21, 2018, Adama announced that it had received an order

26   from Ray Core Lights that would increase revenue by $800,000.  Tanner again was

27   quoted:  "This is a gigantic development for the Company. Traditionally, more than

28   90% of our revenue has stemmed from government defense contracts. For months we

have been focused on diversifying our revenue and now, in additional to ramping up our government contracts, we are starting to see a good influx of these private-sector contracts, putting ADAC on the path to a more diverse, broader base of revenue streams."

33.     On April 3, 2018, Adama filed a notice of late filing with the SEC in which it represented that, although it was not going to be able to file its annual report and other reports by their due date, it expected to file the reports "within the extension period."  Adama also represented that there would not be "any significant change in results of operations from the corresponding period for the last fiscal year … reflected by the earnings statements to be included in the subject report."  The notice was signed by Sills.

34.     Although no filing with the SEC had been made identifying a change of management, or in particular Tanner's installment as president, Tanner continued to make representations about Adama and, Plaintiff is informed and believes and based thereon alleges, he did so with Sills's approval.  The basis for Plaintiff's information and belief is that, in one of the final filings Adama did submit to the SEC, an 8-k filing dated April 10, 2018, signed by Sills, Tanner was identified as Adama's president in a press release that was attached to the submission as an exhibit.

35.     In the April 10, 2018, press release attached to Adama's SEC filing of that date, titled, "Adama Technologies Announces Record Breaking Q1 Revenue," Tanner was quoted as saying that revenue of $228,000 for the month of March alone "is truly outstanding news for ADAC. This provides us with further confirmation that we are not only on the right track, but that our current model for increasing sales and growing this company is already producing results."

36.     On April 11, 2018, Adama announced it was nearing completion on a contract for aircraft towing adapters.  According to Tanner, "The most exciting detail about this contract is this is a private aviation contract and demonstrates the diversity

COMPLAINT

1  we are continuing to achieve with our production schedule and our revenue. We are

2  excited to see that continued depth and development of our income streams."

3        37.    On May 1, 2018, Adama announced, on the OTC PR wire site, that it

4  had begun "filming a new corporate video that will serve as a valuable sales and

5  marketing tool for new clients and customers. The corporate video will feature a

6  walkthrough of the facility, interviews with some of the key management and

7  personnel, as well as demonstrate and inform prospective customers on ADAC's

8  diligence to ensure quality, safety and accuracy on every part and every order."

9        38.    On May 10, 2018, Adama announced, on the OTC PR wire site, that it

10  was implementing new software to improve their bidding processes.  Tanner was

11  quoted as saying, "We have been making a strong push for new government contracts

12  and we are bidding and winning contracts within that sector at a record pace. We do,

13  however, also want to continue to develop our private sector jobs and this new

14  initiative will enable us to do that in a more efficient, competitive and customer-

15  focused manner.… Our plan is not to slow down on the government contracts, we are

16  actually expanding and growing in that area. We do, however, plan to be much more

17  aggressive on the private commercial contracts. We have already made great strides

18  by adding a private lighting company to our customer base and have numerous other

19  contracts we are working on adding as well. The key to this strategy is to add several

20  new software upgrades that will make winning these private contracts much easier

21  and create a more seamless and efficient customer experience. The initiative we are

22  announcing today will make a dramatic difference in our ability to interact with our

23  customers and to generate new customer leads, bids and revenue."

24        39.    On May 22, 2018, Adama tweeted a picture of a certificate Adama

25  claimed it had received 15 years earlier from Raytheon for Adama's work on the

26  AIM-9M Sidewinder missile.

27        40.    During all this time, Adama had yet to file required annual, quarterly,

28  and 8-K reports with the SEC.  On September 25, 2018, Adama tweeted, "We have

1 had numerous inquiries into the timing of our filings, we are aggressively working to

2 complete the necessary filings and we anticipate being current in the very near

3 future." In response to a comment on the tweet, Adama wrote: "We are still here,

4 great things happening on the corporate front, we have just been working through the

5 audit process. Being a high volume, government contractor does not make the

6 annual audit process easy, however, we have made big changes and will be ready

7 moving forward."

8    41.    Plaintiff is informed and believes and on that basis alleges that the

9 representations of Adama set forth in paragraphs 22 through 24 and 29, 32, 36, 38,

10 and 39 above regarding Adama's claimed acquisition of Alpine Technologies'

11 government contract business and the effect on its financial position, which

12 representations were repeated in each and every subsequent SEC filing reciting

13 Adama's corporate history, were false or misleading. The basis for Plaintiff's

14 information and belief is that the public record database listing government

15 contractors contains no entries for Adama, in its own name or as parent of Alpine

16 Industries. Moreover, although there is a public record indicating that Alpine

17 Industries may have bid for government contracts in its own name, Alpine Industries

18 has represented that it is not a subsidiary of any other entity. Public defense

19 contractor records also reveal that, although Alpine Industries may have had some

20 defense contracts in the past, it had no contracts awarded in 2016 or 2017 yielding

21 any revenues from airplane parts sales and did not obtain any revenues from defense

22 contracts with the government again until 2019.

23    42.    Plaintiff is informed and believes and on that basis alleges that the

24 representations by Adama in paragraphs 25, 26, and 28 above, regarding Adama's

25 launch of the cryptocurrency CryX in partnership with Bit Trader Live, was false or

26 misleading. The basis for Plaintiff's information and belief is that a search of the

27 Internet reveals that the partner in the venture, Bit Trader Live, and its website

28 identified in Adama's media communications, never existed. Nor does it appear that

1  CryX was ever established as a form of cryptocurrency by Adama or the employees
2  trained in airplane parts manufacturing at Alpine Industries.

3      43.     Plaintiff is informed and believes and on that basis alleges that, in
4  addition to the statements referenced in paragraphs 41 and 42 above, all the other
5  representations made by Adama quoted above in paragraphs 22 through 40 were
6  false or misleading, including the representations that Adama expected to submit the
7  untimely reports it needed to file with the SEC to maintain its registration.  The basis
8  for Plaintiff's information and belief is that Adama continued for more than a year to
9  file no further required reports with the SEC after the April 3, 2018, notice that its
10  annual, quarterly, and 8-k reports would be untimely, nor did Adama attempt to
11  maintain its viability as a corporate entity.  Instead, not long after representing that it
12  was going to cure its filing deficiencies, Adama allowed its corporate status to be
13  revoked by the Delaware Secretary of State on January 13, 2019.  Then, upon being
14  notified by the SEC, in an Order Instituting Proceeding dated August 26, 2019, that
15  its continued failure to file required updated information and reports would result in
16  its registration being revoked, Adama continued to do absolutely nothing to remedy
17  its defaults.  As a result, on December 8, 2020, Adama's securities registration was
18  revoked by the SEC.

19      44.     Plaintiff had begun purchasing Adama shares on February 14, 2018,
20  shortly after the run-up in Adama's share price prompted by Adama's December
21  2017 announcement about its partnership with Bit Trader Live.  Between that time
22  and February 16, 2018, Plaintiff purchased 1,715,000 shares, for a total purchase
23  price of $116,301.55.  Between February 22, 2018, and July 13, 2018, Plaintiff
24  purchased another 5,285,000 shares, for a total of 7,000,000.  The price Plaintiff paid
25  for those additional shares was $105,859.04, so that Plaintiff's total investment in
26  Adama shares cost $222,160.59.  Since the SEC's revocation of Adama's securities
27  registration, the shares have been worthless.
28

COMPLAINT

**FIRST CAUSE OF ACTION**

(VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5)

AS AND FOR A FIRST CAUSE OF ACTION FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

45.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 44, inclusive, of Plaintiff's Complaint with the same force and effect as though fully set forth herein.

46.    The defendants, and each of them, with scienter, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails:

(a)    employed devices, schemes or artifices to defraud;

(b)    made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons; in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

47.    By reason of the foregoing, each of the Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

48.    Plaintiff is informed and believes and on that basis alleges that Defendants Sills, Rushing, Tanner, Rosenblum, and Pfeifer, whom Adama identified as its "control persons," and Erik Durrant, whom Adama and Alpine Industries identified as "owner" of Alpine Industries and a recipient of a loan from Adama (collectively the "Officer Defendants"), acted as controlling persons of Adama and Alpine Industries within the meaning of Section 20(a) of the Exchange Act.

13

49.   By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Adama's and Alpine's operations and/or intimate knowledge of the false financial statements filed by the Adama with the Securities and Exchange Commission and disseminated to the investing public, the Officer Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Adama and Alpine Industries, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Officer Defendants were provided with or had unlimited access to copies of the reports, press releases, public filings and other statements regarding Adama's core financials, which were materially misstated as set forth above, prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.   Plaintiff is informed and believes and on that basis alleges that, by virtue of their ownership and control of Adama and Alpine Industries, the Officer Defendants, and each of them, had direct and supervisory involvement in the day-to-day operations of Adama and Alpine Industries and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged in this Complaint, and exercised the same.

51.   As set forth above, the Officer Defendants, and each of them, violated Section 10(b) of the 1934 Exchange Act, 15 U.S.C.A. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, as alleged in this Complaint. By virtue of their positions as controlling persons, the Officer Defendants are liable pursuant to Section 20 of the Exchange Act, 15 U.S.C.A. § 78t-1.

52.   As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with their purchases of Adama's securities during the period February 14, 2018, through July 13, 2018.

COMPLAINT

**SECOND CAUSE OF ACTION**

(VIOLATION OF SECTION 12(a)(1) OF THE SECURITIES ACT)

AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF SECTION 12(a)(1) OF THE SECURITIES ACT AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

53.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 44, inclusive, of Plaintiff's Complaint with the same force and effect as though fully set forth herein.

54.     No registration statement was in effect with the Securities and Exchange Commission ("SEC") with respect to the shares of Adama purchased by Plaintiff between February 22, 2018, and July 13, 2018.

55.     In the exercise of reasonable diligence, Plaintiff had no reason to suspect that Adama had no intention of complying with the registration requirements applicable to the transactions at issue.  Adama represented that it would fully comply with all applicable laws, rules, and regulations, including but not limited to all securities laws of the United States and of any jurisdiction in which the promissory notes were marketed and sold.  By entering into the foregoing transactions, Adama affirmatively and fraudulently concealed the necessity for registration of the shares and its lack of intent to maintain such registration.

56.     Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or other mails, offered to sell or sold securities, or, directly or indirectly, carried or caused such securities to be carried through the mails or in interstate commerce for the purpose of sale or delivery after sale.

57.     By reason of the above, Defendants, and each of them, directly or indirectly violated Sections 5(a) and (c) of the Securities Act, 15 U.S.C.A. § 77e(a),

COMPLAINT

1   (c), and are subject to liability under Section 12(a)(1) of the Securities Act, 15

2   U.S.C.A. § 77l(a)(l).

3       58.     Plaintiff is informed and believes and on that basis alleges that

4   Defendants Sills, Rushing, Tanner, Rosenblum, and Pfeifer, whom Adama identified

5   as its "control persons," and Erik Durrant, whom Adama and Alpine Industries

6   identified as "owner" of Alpine Industries and a recipient of a loan from Adama

7   (collectively the "Officer Defendants"), acted as controlling persons of Adama and

8   Alpine Industries within the meaning of Section 15 of the Securities Act.

9       59.     By virtue of their high-level positions, and their ownership and

10  contractual rights, participation in and/or awareness of the Adama's and Alpine's

11  operations and/or intimate knowledge of the false financial statements filed by the

12  Adama with the Securities and Exchange Commission and disseminated to the

13  investing public, the Officer Defendants had the power to influence and control and

14  did influence and control, directly or indirectly, the decision-making of Adama and

15  Alpine Industries, including the content and dissemination of the various statements

16  that Plaintiff contends are false and misleading. The Officer Defendants were

17  provided with or had unlimited access to copies of the reports, press releases, public

18  filings and other statements regarding Adama's core financials, which were

19  materially misstated as set forth above, prior to and/or shortly after these statements

20  were issued and had the ability to prevent the issuance of the statements or cause the

21  statements to be corrected.

22      60.     Plaintiff is informed and believes and on that basis alleges that, by

23  virtue of their ownership and control of Adama and Alpine Industries, the Officer

24  Defendants, and each of them, had direct and supervisory involvement in the day-to-

25  day operations of Adama and Alpine Industries and, therefore, are presumed to have

26  had the power to control or influence the particular transactions giving rise to the

27  securities violations as alleged in this Complaint, and exercised the same.

28

61.     As set forth above, the Officer Defendants, and each of them, violated Section 12(a)(1) of the 1933 Securities Act, 15 U.S.C.A. § 77l(a)(l), as alleged in this Complaint. By virtue of their positions as controlling persons, the Officer Defendants are liable pursuant to Section 15 of the Exchange Act, 15 U.S.C.A. § 77o.

62.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchases of Adama's securities during the period February 22, 2018, through July 13, 2018.

## THIRD CAUSE OF ACTION

(VIOLATION OF SECTION 12(a)(2) OF THE SECURITIES ACT)

AS A THIRD CAUSE OF ACTION FOR VIOLATION OF SECTION 12(a)(2) OF THE SECURITIES ACT AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

63.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 44, inclusive, of its Complaint with the same force and effect as though fully set forth herein.

64.     The Registration Statement for the Adama shares at issue, as of February 22, 2018, contained misstatements of material facts, omitted to state facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. The actions of solicitation by Defendants, and each of them, included participating in the preparation of the false and misleading Registration Statement and failing to maintain its registration by updating the information contained in the Registration Statement as required by the SEC.

65.     Plaintiff purchased Adama common stock issued pursuant to or traceable to the false and misleading Registration Statement.  Plaintiff did not know, or in the exercise of due diligence could not have known, of the untruths and omissions contained in the Registration Statement and Prospectus.

COMPLAINT

66.     By reason of the conduct alleged in this complaint, Adama and the other Defendants, and each of them, violated § 12(a)(2) of the Securities Act, 15 U.S.C.A. § 77l(a)(2).

67.     Plaintiff elects to rescind and tender to those Defendants named in this Count those securities that Plaintiff continues to own, in return for the consideration paid for those securities together with interest.

68.     This action was brought within one year after the discovery of the untrue statements and omissions and within three years after the stock offering.

69.     Plaintiff is informed and believes and on that basis alleges that Defendants Sills, Rushing, Tanner, Rosenblum, and Pfeifer, whom Adama identified as its "control persons," and Erik Durrant, whom Adama and Alpine Industries identified as "owner" of Alpine Industries and a recipient of a loan from Adama (collectively the "Officer Defendants"), acted as controlling persons of Adama and Alpine Industries within the meaning of Section 15 of the Securities Act.

70.     By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Adama's and Alpine's operations and/or intimate knowledge of the false financial statements filed by the Adama with the Securities and Exchange Commission and disseminated to the investing public, the Officer Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Adama and Alpine Industries, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Officer Defendants were provided with or had unlimited access to copies of the reports, press releases, public filings and other statements regarding Adama's core financials, which were materially misstated as set forth above, prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

COMPLAINT

71.     Plaintiff is informed and believes and on that basis alleges that, by virtue of their ownership and control of Adama and Alpine Industries, the Officer Defendants, and each of them, had direct and supervisory involvement in the day-to-day operations of Adama and Alpine Industries and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged in this Complaint, and exercised the same.

72.     As set forth above, the Officer Defendants, and each of them, violated Section 12(a)(1) of the 1933 Securities Act, 15 U.S.C.A. § 77l(a)(l), as alleged in this Complaint. By virtue of their positions as controlling persons, the Officer Defendants are liable pursuant to Section 15 of the Exchange Act, 15 U.S.C.A. § 77o.

73.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with their purchases of Adama's securities during the period February 22, 2018, through July 13, 2018.

# FOURTH CAUSE OF ACTION

### (VIOLATION OF SECTION 11 OF THE SECURITIES ACT)

AS A FOURTH CAUSE OF ACTION BASED ON VIOLATION OF SECTION 11 OF THE SECURITIES ACT AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

74.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 44, inclusive, of Plaintiff's Complaint with the same force and effect as though fully set forth herein.

75.     The Registration Statement for the sale of shares at issue, as left unamended, was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated.

76.     Defendant Adama is the registrant for the Offering. The Defendants named in this Count were responsible for the contents and dissemination of the Registration Statement.

78.     As issuer of the shares, Defendant is strictly liable to Plaintiff for any misstatements and omissions.

79.     Plaintiff is informed and believes and on that basis alleges that none of the Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement, as unamended, were true and without omissions of any material facts and were not misleading.

80.     By reason of the conduct alleged in this Complaint, each Defendant named in this Count violated, and/or controlled a person who violated, § 11 of the Securities Act, 15 U.S.C.A. § 77k.

81.     As detailed above, Plaintiff acquired Adama stock pursuant and/or traceable to the Registration Statement for the Offering.

82.     Plaintiff has sustained damages. The value of Adama common stock has been reduced to zero due to the violations of Defendants, and each of them.

83.     At the time of Plaintiff's purchase of Adama stock, Plaintiff was without knowledge of the facts concerning the wrongful conduct alleged in this Complaint and could not have reasonably discovered those facts before August 29, 2020.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts on which this Complaint is based to the time that Plaintiff filed its Complaint. Less than three years elapsed between the time that the securities on which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

84.     Plaintiff is informed and believes and on that basis alleges that Defendants Sills, Rushing, Tanner, Rosenblum, and Pfeifer, whom Adama identified as its "control persons," and Erik Durrant, whom Adama and Alpine Industries identified as "owner" of Alpine Industries and a recipient of a loan from Adama (collectively the "Officer Defendants"), acted as controlling persons of Adama and Alpine Industries within the meaning of Section 15 of the Securities Act.

85.     By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Adama's and Alpine's operations and/or intimate knowledge of the false financial statements filed by the Adama with the Securities and Exchange Commission and disseminated to the investing public, the Officer Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Adama and Alpine Industries, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Officer Defendants were provided with or had unlimited access to copies of the reports, press releases, public filings and other statements regarding Adama's core financials, which were materially misstated as set forth above, prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

86.     Plaintiff is informed and believes and on that basis alleges that, by virtue of their ownership and control of Adama and Alpine Industries, the Officer Defendants, and each of them, had direct and supervisory involvement in the day-to-day operations of Adama and Alpine Industries and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged in this Complaint, and exercised the same.

87.     As set forth above, the Officer Defendants, and each of them, violated Section 11 of the 1933 Securities Act, 15 U.S.C.A. § 77k, as alleged in this Complaint. By virtue of their positions as controlling persons, the Officer Defendants are liable pursuant to Section 15 of the Exchange Act, 15 U.S.C.A. § 77o.

88.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff suffered damages in connection with their purchases of Adama's securities during the period February 22, 2018, through July 13, 2018.

COMPLAINT

**FIFTH CAUSE OF ACTION**

(VIOLATION OF CALIFORNIA CORPORATE CODE SECTION 25401)

AS A FIFTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CORPORATE CODE SECTION 25401 AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

89.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 44, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

90.    Defendants, and each of them, offered to the sale of the securities described above by means of written communication which included untrue statements of a material fact or omitted to state a material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, as set forth in paragraphs 22 through 40 above.

91.    The statements were untrue, false, and misleading for the reasons set forth in paragraphs 41 through 43 above.

92.    Plaintiff did not know that the statements made by Defendants, and each of them, were untrue or that the materials fact omitted by defendant made Defendant's other statements misleading.  If plaintiff had known that the statement made by defendant were untrue or the material facts omitted by Defendants made Defendants' other statements misleading, Plaintiff would not have purchased the securities from Defendants.

93.    Defendants' conduct as described in this Complaint was in violation of section 25401 of California's Corporations Code.

94.    Pursuant to the provisions of section 25501 of the Corporations Code, Plaintiff is entitled to rescind the purchase of the securities described above and recover the price paid from Defendants, and each of them.

95.    Before entry of judgment in this action Plaintiff will tender to Defendants the 7 million shares Plaintiff received.

22

COMPLAINT

96.     At all times mentioned in this Complaint, Defendants, and each of them, were holders of more than 5 percent of the shares of Adama or otherwise held the position of an officer of Adama or Alpine Industries such that Defendants, and each of them, directly or indirectly controlled Adama and Alpine Industries. As a result, Defendants, and each of them, are jointly and severally liable with, and to the same extent as, Adama and Alpine Industries for the violation of Corp. Code § 25401 described in this complaint.

97.     At all times mentioned in this Complaint, Defendants, and each of them, with the intent to deceive or defraud plaintiff, materially assisted the other Defendant in violating section 25401 of the Corporations Code and, as a result, are jointly and severally liable with Adama and Alpine Industries for the violation of Corp. Code § 25401 described in this Complaint.

**SIXTH CAUSE OF ACTION**

(FRAUD)

AS A SIXTH CAUSE OF ACTION FOR FRAUD AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

98.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 44, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

99.     Defendants, and each of them, made the positive representations set forth in paragraphs 22 through 40 above, and the omissions identified in paragraphs 41 through 43 above, for the purpose of inducing Plaintiff and others to purchase shares of Adama and with awareness that the representations and omissions would cause Plaintiff and others to purchase such share.

100.    Plaintiff is informed and believes and on that basis alleges that the foregoing representations were false when made, for the reasons set forth in paragraphs 41 through 43 above.

101.   On their face, the representations set forth in paragraphs 22 through 40 reasonably appeared to be made by persons with knowledge of the basis for the representations made, and Plaintiff justifiably relied on the representations and omissions as set forth above.

102.   As a proximate result of the foregoing, Plaintiff in fact relied on the aforementioned representations and omissions to Plaintiff's detriment.

103.   Plaintiff is therefore entitled to recover its actual loss and damages in the amount of $222,160.59, plus interest.

104.   In addition to the foregoing, Defendants' conduct in making the misrepresentations and omissions at issue and allowing Adama's registration to be revoked, thereby wiping out the value of the shares, demonstrated extreme indifference to Plaintiff's rights and amounted to reprehensible, fraudulent conduct in blatant violation of applicable law. Accordingly, Plaintiffs should be awarded exemplary damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**

(NEGLIGENT MISREPRESENTATION)

AS A SEVENTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS, AND EACH OF THEM, PLAINTIFF ALLEGES:

105.   Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 44, inclusive, of Plaintiff's Complaint with the same force and effect as though set forth in full.

106.   Defendants, and each of them, made the positive representations set forth in paragraphs 22 through 40 above, and the omissions identified in paragraphs 41 through 43 above, with knowledge that the class of investors including Plaintiff would rely on the representations in purchasing shares of Adama.

COMPLAINT

107.   Plaintiff is informed and believes and on that basis alleges that the foregoing representations were false when made, for the reasons set forth in paragraphs 41 through 43 above.

108.   On their face, the representations set forth in paragraphs 22 through 40 reasonably appeared to be made by persons with knowledge of the basis for the representations made, and Plaintiff justifiably relied on the representations and omissions as set forth above.

109.   As a proximate result of the foregoing, Plaintiff in fact relied on the aforementioned representations and omissions to Plaintiff's detriment.

110.   Plaintiff is therefore entitled to recover its actual loss and damages in the amount of $222,160.59, plus interest.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

FOR THE FIRST CAUSE OF ACTION FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5 AGAINST DEFENDANTS, AND EACH OF THEM:

1.   For at least the sum of two hundred twenty-two thousand one hundred sixty dollars and fifty-nine cents ($222,160.59) or according to proof at the time of trial;

2.   For lawful interest thereon from and after February 14, 2018, or according to proof at the time of trial;

FOR THE SECOND CAUSE OF ACTION FOR VIOLATION OF SECTION 12(a)(1) OF THE SECURITIES ACT AGAINST DEFENDANTS, AND EACH OF THEM:

3.   For at least the sum of one hundred five thousand eight hundred and

fifty-nine dollars and four cents ($105,859.04) or according to proof at the time of trial;

4.     For lawful interest thereon from and after February 22, 2018, or according to proof at the time of trial;

FOR THE THIRD CAUSE OF ACTION FOR VIOLATION OF SECTION 12(a)(2) OF THE SECURITIES ACT; AGAINST DEFENDANTS, AND EACH OF THEM:

5.     For at least the sum of one hundred five thousand eight hundred and fifty-nine dollars and four cents ($105,859.04) or according to proof at the time of trial;

6.     For lawful interest thereon from and after February 22, 2018, or according to proof at the time of trial;

FOR THE FOURTH CAUSE OF ACTION FOR VIOLATION OF SECTION 11 OF THE SECURITIES ACT AGAINST DEFENDANTS, AND EACH OF THEM:

7.     For at least the sum of one hundred five thousand eight hundred and fifty-nine dollars and four cents ($105,859.04) or according to proof at the time of trial;

8.     For lawful interest thereon from and after February 22, 2018, or according to proof at the time of trial;

FOR THE FIFTH CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CORPORATE CODE SECTION 25401 AGAINST DEFENDANTS, AND EACH OF THEM:

9.     For rescission of Plaintiff's purchase of the shares at issue;

10.     For at least the sum of two hundred twenty-two thousand one hundred sixty dollars and fifty-nine cents ($222,160.59) or according to proof at the time of trial;

COMPLAINT

11.     For lawful interest thereon from and after February 14, 2018, or according to proof at the time of trial;

FOR THE SIXTH CAUSE OF ACTION FOR FRAUD AGAINST DEFENDANTS, AND EACH OF THEM:

12.     For at least the sum of two hundred twenty-two thousand one hundred sixty dollars and fifty-nine cents ($222,160.59) or according to proof at the time of trial;

13.     For lawful interest thereon from and after February 14, 2018, or according to proof at the time of trial;

14.     For punitive and exemplary damages;

FOR THE SEVENTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS, AND EACH OF THEM:

15.     For at least the sum of two hundred twenty-two thousand one hundred sixty dollars and fifty-nine cents ($222,160.59) or according to proof at the time of trial;

16.     For lawful interest thereon from and after February 14, 2018, or according to proof at the time of trial;

FOR EACH AND EVERY CAUSE OF ACTION:

17.     For costs of suit incurred herein, including attorney fees as appropriate; and

18.     For any such other and further relief as this Honorable Court deems just and proper.

COMPLAINT

DATED: February 22, 2021

Respectfully submitted,

RONALD P. SLATES

A PROFESSIONAL CORPORATION

_____/s/ James W. Denison_____.

BY: JAMES W. DENISON

Attorney for Plaintiff Ronald P. Slates

COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff Ronald P. Slates hereby demands a jury trial in the above-entitled action.

DATED: February 22, 2021

Respectfully submitted,

RONALD P. SLATES

A PROFESSIONAL CORPORATION

_____/s/ James W. Denison_____.

BY: JAMES W. DENISON

Attorney for Plaintiff Ronald P. Slates

COMPLAINT